739 So.2d 973 (1999)
Mike GUIMMO and Karen Guimmo
v.
Delores Crespo ALBARADO and Rickie Joseph Albarado, Southern Title, Inc., Richard Berry & Associates, Inc., Countrywide Home Loans, Inc., David Montz, John Johnson, Judy Nugent, Jerome Bostick and Timothy Terrell.
No. 99-CA-286.
Court of Appeal of Louisiana, Fifth Circuit.
July 27, 1999.
William J. Scheffler, III, Marrero, LA, for Plaintiffs-Appellants.
Curtis Gordon, Gretna, LA, Joseph R. Ward, Jr., James E. Brouillette, New Orleans, LA, For Defendants-Appellees.
Anthony Rollo, Lauren L. Zimmermann, New Orleans, LA, Kurt D. Engelhardt, Metairie, LA, Leonard M. D'Angelo, Metairie, LA, George S. Ruppenicker, Harvey, LA, for Defendant-Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and ROBERT L. LOBRANO Pro Tempore.
DUFRESNE, Judge.
This is an appeal by Mike Guimmo and his wife Karen, plaintiffs-appellants, from a summary judgment in favor of Countrywide Home Loans, Inc., defendant-appellee, in this suit involving the purchase of a lot with a defective slab. For the following reasons, we affirm that judgment.
The undisputed facts are as follows. The Guimmos became interested in a residential lot on which a slab had been constructed *974 as a foundation for a house. They began dealing with David Montz, a real estate agent and general contractor. The price of the lot was $38,000, and the Guimmos allege that Montz told them that he could complete a house on the slab for another $70,000. They signed an agreement to purchase the property on January 31, 1996, and sought a loan from Countrywide Home Loans, Inc. sometime in February. Cheryl Briseno, Countrywide's local manager, handled the matter.
In her deposition, Briseno represented that because of the existing slab which the Giummos intended to utilize, the only type of financing available through her institution to fit these circumstances was a FHA 203(k) loan. She explained that the 203(k) was designed to promote renovation of existing homes by providing for a low down payment and a single closing for both the purchase of the property and the renovation costs. When such a loan is made, the purchase price is paid to the seller, but the renovation costs are placed in an interest bearing account by the lender and these funds are dispersed as the renovation proceeds. She noted that because these loans are guaranteed by the federal government, all inspectors, appraisers and closing firms must be on the government's approval lists. The Guimmos agreed to this financing, and their loan was tentatively approved.
Upon making this loan application, the Guimmos were provided with a HUD form styled "IMPORTANT NOTICE TO HOMEBUYERS," the first paragraph of which stated:
Condition of Property
The property you are buying is not HUD/FHA approved and HUD/FHA does not warrant the condition or the value of the property. An appraisal will be performed to estimate the value of the property, but the appraisal does not guarantee that the house is free of defects. You should inspect the property yourself very carefully or hire a professional inspection service to inspect the property for you. If you have a professional home inspection service perform an inspection of the property, you may include some of the cost of the inspection in your mortgage.
This document was signed by both of the Guimmos on February 13, 1996, On March 12, 1996, the Giummos informed Briseno that there was litigation involving title to the property and the loan process was put on hold. Briseno testified that at that point the Guimmos expressed concerns about the purchase, and she then advised them that they might consider buying another property. She further testified that the Guimmos were worried about Montz, their agent and contractor, and she advised them to consider getting another contractor to advise them further on their project.
Several weeks later, however, on April 3, the Guimmos called to say that the litigation was resolved insofar as it affected clear title to the lot, and asked that the loan process be revived. Briseno said that at that point she selected John Johnson from her list of FHA approved inspectors to conduct a review of the Giummos' proposal to determine whether it complied with applicable HUD regulations. She similarly selected Judy Nugent, an FHA approved appraiser, to do an appraisal of the property. She also said that she did not specifically recall whether David Montz, the Guimmos' realtor and contractor, had requested that Southern Title, Inc. do the closing or whether that company was randomly selected by her, but in any case this firm was also on her FHA approved list.
Johnson submitted a report to Countrywide on March 26, stating that he had inspected the property and reviewed the proposal according to HUD guidelines. He attached the architectural exhibits, specifications of repairs, and description of materials, and concluded that "the repairs as listed meet Hud's eligible and required improvements and the total cost of $70,000 is reasonable for the scope of the work." *975 Nugent submitted an appraisal which gave $35,000 as the value of the lot and $144,148 as the cost of the completed house as per the plans and specifications.
The matter proceeded uneventfully to a closing of the sale on April 19, 1996. The Giummos contended in their affidavit submitted with their opposition to summary judgment that by the time of the closing Montz had still not signed a contract for construction of the proposed house. They further recited that after about a month of inaction on this construction by Montz they contacted another contractor who informed them that the slab was useless because it did not meet the then existing building code elevation requirements. He gave them an estimate of $140,000 for him to build the house depicted in their plans. Upon learning of these problems, the Giummos had the slab removed for $2,500, resold the lot the following year for $37,000, and paid off the Countrywide mortgage in full. They then brought the present action against all parties who participated in the original transaction to recover their losses.
Countrywide urged a motion for summary judgment which was granted. The Giummos appealed, but because the trial judge had not certified that partial judgment as appealable pursuant to La.Code Civ. Pro., 1915, this court dismissed the matter for lack of appellate jurisdiction. The Giummos subsequently urged the trial judge to certify the judgment as appealable and she did so, thus curing the jurisdictional defect of the first appeal. The matter is now properly before this court.
The Giummos' basic argument here is that summary judgment in favor of Countrywide was improper because there remain disputes as to material facts. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the mover is entitled to judgment as a matter of law, La.Code Civ. Pro., Art. 966. While the burden of proving that summary judgment is warranted remains with the movant, if that party will not bear the burden of proof at trial then his burden on the motion is not to negate all essential elements of the opponent's claim, action or defense, id. Instead, he need only point out to the court that there is an absence of factual support for these elements, id. At that point, it is incumbent on the opposing party to come forward with factual support for these elements, id.
Before addressing the specific issues which appellants contend are in dispute, we first note that dealings between lending institutions and borrowers are generally considered to be arm's length transactions which do not impose any independent duty of care on the part of the lender, Greene v. Gulf Coast Bank, 593 So.2d 630 (La.1992). However, under certain circumstances, such as where a fiduciary relationship is manifest, such a duty to the borrower may arise, id. Our inquiry here is thus whether there are factual matters in dispute which would support the existence of a special duty of care, and if not, whether Countrywide might otherwise be liable for the damages suffered by the Guimmos.
The above recitation of undisputed facts shows that Countrywide dealt with the Guimmos as arm's length borrowers and nothing else. There are no allegations that it ever became involved in the design or proposed construction of the house, or that it made representations as to the fitness of the slab. To the contrary, Countrywide produced the Important Notice to Homebuyers which recited that the condition of the property was not guaranteed by HUD/FHA, and urged buyers to have a professional inspection done. Briseno testified in deposition that she told the Guimmos that if they were uneasy about Montz they should consult another contractor to inspect the property, and also suggested that they look for another house if they were concerned about the project. Neither *976 is it anywhere alleged that Briseno made any representations to the borrowers as to the condition of the slab or the feasibility of the proposed construction. The Guimmos, for their part, did not deny signing the HUD/FHA form, nor did they refute Briseno's testimony that she advised them to seek other expert advice or buy another house. Further, there was nothing presented by the Guimmos to refute Countrywide's representations that it relied in good faith on the report of Johnson, the HUD approved inspector, in concluding that the proposed house could be completed for $70,000 on the existing slab. Considering all of these uncontested factors, there are simply no special circumstances here which would give rise to an additional duty on the part of the lender to protect the borrowers from this unfortunate purchase.
The remaining inquiry is whether there are any disputed facts which might otherwise give rise to liability on the part of Countrywide for plaintiff's damages. Although the Guimmos advance nine alleged factual disputes, in this court's opinion these matters are either not in dispute, are mere allegations lacking in any factual support, or are irrelevant to the case.
The first alleged dispute is whether the 203(k) loan was improperly recommended by Briseno. This question is irrelevant. It is undisputed that the proposal fell through not because of the type of loan made, but because of the slab problem. Also irrelevant is the issue of whether Briseno had a vested interest in concluding the loan because she receives commissions on these transactions. It is assumed that loan officers and their lending institutions always have a vested interest in making loans. Similarly, the assertion that the loan should not have been closed because of the litigation involving the lot's owners was ongoing is of no consequence here. The lot had been released from that litigation and there were no title problems which were related to the eventual failure of the project. Finally, the issue of whether the closing notary had informed Countrywide that Montz and the Guimmos had not signed a construction contract by the time of sale is also irrelevant. The loan was not predicated on the borrowers reducing to writing their agreement with Montz and Countrywide was not a party to that agreement.
The Guimmos contend that there are additional issues as to whether John Johnson told Countrywide that the project could not be completed for $70,000, and whether Judy Nugent informed it that the slab was below grade. However, the Guimmos have not produced any factual support for either of these assertions as required by Art. 966. They also urge that Countrywide did not provide them with the appraisal and other unspecified documents before the closing and did not explain the contents of any of these unspecified documents. As to the appraisal, Briseno testified that she did in fact provide a copy of the appraisal, as well as the appraiser's disclaimer as to possible defects in the property, to the Guimmos prior to the act of sale, and there is nothing in the borrower's papers to refute this testimony. The only sworn statement bearing on the appraisal is the Guimmos' affidavit which says only that "we were not made aware" of the discrepancy between the $38,000 selling price and the $35,000 appraised value. As to documents not being explained, when a party signs papers they are presumed to know the contents of those papers, see Magri v. Lee, 470 So.2d 910 (La.App. 5th Cir.1985). Moreover, the Guimmos fail to show any specific facts relating to the unspecified documents showing that there are issues for trial as required by La.Code Civ. Pro., Art. 967.
The last issue allegedly in dispute is whether Briseno should have approved the Guimmos' loan because of the difference in the $70,000 estimate of the cost of construction found to be reasonable by John Johnson and the $144,000 figure used by Judy Nugent in her appraisal as the *977 probable cost of that same construction. This allegation does not actually point to a factual dispute, but rather urges a legal conclusion, i.e. that Briseno breached some legal duty owed the Guimmos in agreeing to lend them money for the project given the disparity between the estimated cost of the project as estimated by the contractor Montz and corroborated by the HUD approved inspector Johnson, and that of the appraiser Nugent. Because we have already determined that on the undisputed facts of the case there was no duty on the part of the lender to assure a favorable outcome of the borrowers' project, and also because the information as to the two figures was available to the borrowers as well as the lender, Countrywide can not be held liable to the Guimmos simply for making the loan at issue.
For the foregoing reasons, we affirm the summary judgment of the district court dismissing Countrywide Home Loans, Inc. from this suit.
AFFIRMED.